**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

REPORT AND
RECOMMENDATION
03-CR-6051

v.

NICHOLAS J. COLANGELO,

        Defendant.

---

### Preliminary Statement

Pending before the Court is defendant's motion to suppress evidence, specifically, a number of tapes containing conversations that were secretly recorded and/or monitored by the government. (Docket #10). The government contends that the interceptions were legal because they were done with the consent of a confidential informant. (Docket #11, 14). On November 2, 3, and 12, 2004, this Court conducted a suppression hearing pursuant to United States v. Bonanno, 487 F.2d 654 (2d Cir. 1973), to determine the voluntariness of the informant's consent to have his conversations with defendant recorded.[1] After the hearing, the parties filed supplemental briefs on the issue. (Docket #32, 33). By Order of Judge David G. Larimer, dated March 25, 2003, all pretrial motions have been referred to this Court pursuant to 28 U.S.C. §636(b)(1)(A)-(B). (Docket #2). The following is my Report and

---

[1] Citations to the hearing transcripts shall be prefaced with "T." (Docket # 29 and 30).

Recommendation as to the defendant's suppression motion.

### Factual Background

At the hearing, the government offered the testimony of two FBI special agents: Robert P. Briggs and Mario Campana. The testimony adduced at the suppression hearing revealed that in 1998, Anthony Delmonti started cooperating with the FBI in a confidential informant capacity. (T. 279-80). According to Agent Briggs, Delmonti was not under investigation by the FBI at that time. (T. 315). During September 1999, Delmonti executed a series of consent forms, permitting the government to record his conversations with certain individuals. (Exhibits # 37, 38, 39). Although these forms do not specifically include defendant's name, two of the forms do give consent for recordings of conversations with individuals "as yet unknown." (Exhibits # 37, 39). Each of these consent forms include an acknowledgment that Delmonti signed them voluntarily, without coercion or threats of any kind.

On December 29, 1999, Delmonti signed a formal written cooperation agreement with the FBI. (Exhibit # 44). The agreement recited that Delmonti was "willing to furnish assistance to the FBI in its investigations" in exchange for payment for services he rendered. The payments authorized by the agreement were $4500 per month plus reasonable expenses incurred "in furtherance of an investigation." The agreement stated that it would "continue as

2

long as the FBI deems services are required."[2] As to recording conversations, paragraph "2" of the agreement provided, in part:

> Delmonti agrees, at the direction of an and under the supervision of the FBI, to meet with designated individuals **and agrees to make or have made by the FBI, consensual visual, oral, and wire recordings of such meetings and related telephone calls**.

Exhibit #44 (emphasis supplied).

Agent Briggs testified that between August and December 2000, the government recorded numerous conversations between Delmonti and the defendant, who was a target in a money laundering investigation, with Delmonti's full knowledge and consent. (T. 13, 61, 259). During this four month period, Delmonti repeatedly concealed recording devices on his body, and it was he who actually performed the interception of the conversations. (T. 49-50, 61). Agent Briggs testified that he never observed Delmonti to be under the influence of drugs during this time. (T. 317).

## Discussion

Title I of the Electronic Communications Privacy Act of 1986 provides that an intercepted communication is not unlawful if one

---

[2] Although the agreement provided that any extension beyond September 30, 2000 was "contingent upon annual congressional funding," such funding was undoubtedly approved because the government revealed that over the course of Delmonti's cooperation with the FBI, he received total compensation in the amount of $259,455.23. (Exhibit #45).

party to the communication has given prior consent to the interception. 18 U.S.C. 2511(2)(c). Thus, the government has the burden of proving that Delmonti voluntarily consented to have his conversations with the defendant recorded. See United States v. Bonanno, 487 F.2d 654, 658-59 (2d Cir. 1973); United States v. Kolodziej, 706 F.2d 590, 593 (5th Cir. 1983).

The government's burden to demonstrate consent is not particularly onerous and can be demonstrated through either direct or circumstantial evidence. See United States v. Fuentes, 563 F.2d 527, 533 (2d Cir.)(government may meets it burden of proving consent by "circumstantial evidence, rather than direct evidence from the informant or from agents to whom the informant gave his express consent." ), cert. denied, 434 U.S. 959 (1977). Consent will be deemed voluntary "if, from the totality of the circumstances, the trial court determines that the party agreeing to a wiretap did so consciously, freely, and independently and not as the result of a coercive overbearing of his will." United States v. Kelly, 708 F.2d 121, 125 (3d Cir.), cert. denied, 464 U.S. 916 (1983). In proving consent to record conversations involving a government informant, "it will normally suffice for the Government to show that the informer went ahead with a call after knowing what the law enforcement officers were about." Bonanno, 487 F.2d at 658-59.

The most obvious and direct evidence of Delmonti's voluntary

4

consent to act as a government informant and record conversations under the direction of the FBI is the written agreement Delmonti and the FBI entered into in December 1999. (Exhibit #44). For reasons that still escape this Court, the government tried to conceal disclosure of the written agreement they entered into with Delmonti, despite the fact that paragraph "2" of the agreement was directly relevant to the precise issue before the Court. See Docket #26. Indeed, it was only after two days of difficult testimony and in response to a Brady demand by the defendant that the Court had to order the government to produce the agreement.

Be that as it may, the 1999 agreement and other facts adduced at the hearing clearly demonstrate that Delmonti knew "what the law enforcement officers were about" (Bonanno, 487 F.2d at 658-59) when he voluntarily consented to participate in the recordings of his conversations with the defendant. The 1999 agreement and the consent forms Delmonti signed giving his permission to have his conversations recorded with unnamed persons are *prima facie* evidence of the voluntariness of Delmonti's consent. See, e.g., United States v. Perez, 2002 WL 1835601,*13 (S.D.N.Y. August 8, 2002)(court denied motion to suppress where signed consent form indicated that consent was knowing and voluntary); Lavin v. Thornton, 959 F.Supp. 181, 190 (S.D.N.Y. 1997)(nothing to indicate that consent was revoked after signing form or that consent was narrower than that stated on consent form).

5

Moreover, there was no evidence adduced at the hearing that would indicate that Delmonti was in any way forced, coerced, or threatened into participation. On the contrary, the agreement executed by Delmonti on December 29, 1999 demonstrates that he negotiated a favorable compensation arrangement for himself and participated out of his own self-interest. There is nothing to support defense counsel's argument that these financial incentives in any way negated Delmonti's consent. See United States v. Horton, 601 F.2d 319, 322 (7th Cir.) ("[g]enerally, any benefits that an informant might receive for cooperating with Government investigations would not vitiate his voluntary consent to the electronic recording of his conversations"), cert. denied, 444 U.S. 937 (1979). See also United States v. Kelly, 708 F.2d at 125 (decision to allow recording is "not necessarily involuntary just because that individual's motives were self-seeking, or because he harbored expectations of personal benefit.").

Finally, the parties' course of conduct over a period of several years supports the government's contention that Delmonti's participation was voluntary. See Bonanno, 487 F.2d at 658 (consent to recording is considered "incident to a course of cooperation" where the informer has already decided that participation "entails no unpleasant consequences to him"); Horton, 601 F.2d at 323 (once voluntary cooperation has begun, future participation is considered consensual as it is "merely incidental to the previously determined

6

course of cooperation"); <u>United States v. Burford</u>, 755 F.Supp. 607, 615 (S.D.N.Y. 1991)(informant's "continuing cooperation" with government is "tantamount to his consent to record" later conversations). Indeed, the evidence established that Delmonti affirmately consented to the recordings by fitting himself with body wires, inserting recording devices in his ear, and initiating the interception of the conversations. <u>See</u>, <u>e.g.</u>, <u>United States v. Aristizabal</u>, 1993 WL 262714, *9 (E.D.N.Y. June 25, 1993)(consent deemed voluntary where informant himself placed the calls and patched in the DEA). Given the totality of circumstances present here, I find there to be sufficient evidence to show that Delmonti voluntarily consented to having the government record his conversations with defendant and, therefore, defendant's motion to suppress them should be **denied**.

## Conclusion

For the foregoing reasons, it is my Report and Recommendation that defendant's motion to suppress be **denied**.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE

Dated:   March 2, 2005
         Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R. Civ.P. 72(b) and Local Rule 72.3(a)(3).[3]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See e.g. Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Government and the Defendant.
**SO ORDERED.**

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated: March 2, 2005
Rochester, New York

---

[3] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. §3161(h)(1)(f) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. <u>United States v. Andress</u>, 943 F.2d 622 (6th Cir. 1991); <u>United States v. Long</u>, 900 F.2d 1270 (8th Cir. 1990).